[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case came to this court as a limited contested dissolution of marriage. The parties were married on March 31, 1978 in Kimberton, Pennsylvania. The wife's maiden name was Susan B. Sluka. There are no children issue of this marriage. The record however is undisputed that the parties worked extensively in an attempt to have children. They worked together to try to solve their problems and saw physicians and fertility clinics to assist in their problem. Despite those attempts, there were no children of the marriage. The husband is age 58 and the wife is age 41. It is a second marriage for both. The husband has four children of his prior marriage and four grandchildren. The wife has no children from her prior marriage.
The attorneys in the case did an excellent job presenting the assets to the court and the court has attached an excerpt from the plaintiff's post trial memorandum, which lays out the asset package of the parties. The total asset package of the parties is $888,342. The major dispute of the parties on valuation was the investment in North America Telepacts. The husband claimed it had no value but he paid $10,000 for it, accordingly the court finds that it has $10,000 worth of value.
Susan Frankenheimer is in the fourth year of her business career. She testified she loves her job and she is doing very well. She is working at Helme Tobacco, has had pay increases, has had increased responsibility and increased income. She is a high school graduate. The wife's gross income for this year will be $37,100. Her net income $2,225.71 per month. A pendente lite order was issued by the court and she has been receiving $1,000 per month. Her testimony was that with that incremental of $1,000 she makes ends meet.
The husband graduated from Yale in 1955. He was forced into early retirement in 1990 after 22 years with Combustion Engineering when it was taken over by a foreign company. The husband and wife are both at-will employees. He is presently employed at NYNEX. The husband shows on his financial affidavit of January 20, 1993 a net monthly income of $5,500. He testified, however, that he makes CT Page 2459 a $2,500 voluntary contribution to his 401K plan each month so that effectively if he did not make that contribution he would have much higher earnings. In addition, he earned this year $45,000 in gross bonus or a net bonus of $27,000.
At the time the parties were married the husband's children ranged in age from 10 to 20, and there were 4 children. The two older children were in college. When the parties married the husband had a house. He had borrowed the down payment from a friend. When the parties were married the wife had $12,000 from the proceeds of her dissolution of marriage, a car and a few things from her house.
After the parties married it was the husband's desire that the wife not work. Prior to that she had been working for the airlines in an administrative position in the Philadelphia area. For the first five years of the marriage the wife wanted to have a child. The husband had surgery and tried artificial insemination and other fertility treatments to achieve conception but they were all unsuccessful. The parties mutually agreed to abandon the quest for a child as the husband was getting older and the wife said that she felt problems were existing in the marriage.
At the time of the marriage, the husband had been employed by Combustion Engineering for 10 years and had accumulated thrift plan and pension plan benefits. He received $20,000 to $25,000 relocation allowance from Combustion Engineering when he was transferred to Connecticut after the marriage.
The wife had $12,000 from the divorce settlement that ended her prior marriage. These funds were used along with a mortgage for the acquisition of the first home that the parties purchased together on West Hill Road in Stamford. At later date the wife inherited $40,000 from an uncle and the husband inherited $102,000 from an aunt. The only other funds contributed by the parties to the acquisition of assets were those attributable to the husband's employment and the wife's employment.
The contribution from the wife's employment was slight. She had no employment outside the home until 1983. From 1983 until 1990 she only took part time temporary assignments which would produce only about $100 a week. The court in making awards has taken into consideration the non economic contribution made by the wife to the marriage, See O'Neill v. O'Neill, 13 Conn. App. 300. CT Page 2460
This court finds that the bulk of the assets as set forth on the parties stipulated asset list came about as a result of the husband's work experiences. In 1990 when the husband was forced into early retirement he negotiated with his former employer and substantially enhanced the retirement package that he would have obtained had he accepted what they had offered him. It is undisputed in the stipulation of the parties dated January 22, 1993 that five deposits were made into the husband's CMA account at Merrill Lynch totalling $250,093 from December 1990 through May of 1991. (See attached hereto) In addition, the husband's IRA rollover account received two deposits totalling approximately $437,900 in 1991.
The parties differ as to the causes of the breakdown of the marriage. The parties spent extensive time sailing together. Early on in the marriage the parties owned and enjoyed a boat that was used for cruising and social activities. The wife claims that the husband's drinking and yelling were causes of the breakdown. The husband's claim is that "the other man" caused the breakdown of the marriage. It is clear in listening to the parties that the process of the breakdown of the marriage was a slow process caused by all of the factors mentioned above and the personalities of the parties including the pressures of work for both of the parties and their relationship and frustration concerning the inability to have children. The court allocates no fault to either of the parties as a cause of the breakdown of the marriage.
Both parties agree that the proper amount to be paid in periodic alimony is $1,000 per month or $12,000 per year. They disagree over the duration. The wife is looking for 6 years of alimony and the husband is offering 2 1/2 years of alimony. The husband has cited cases for the proposition that his 2 1/2 year period is better than the wife's 6 years. It is clear to this court that the wife will be able to provide for her own support at some point but the husband points to no such event in 2 1/2 years. The court finds that based on the wife's only recent entry into the job market again and her need for rehabilitative alimony 5 years is an appropriate time taking into consideration all of the statutory criteria in 46b-82. This period will also provide the wife with the training and skills necessary for self sufficiency. When the husband received his defined benefit plan in a lump sum payment the wife in recognition of her entitlement to the joint and survivor annuity under the plan, signed a spousal consent (waiver) form to effectuate the lump sum distribution (Plaintiff's Exhibit 5). The pension payout was rolled over into a Merrill Lynch IRA CT Page 2461 rollover account. Also parts of the Combustion Engineering thrift plan which was a combination of a 401K and a profit sharing plan had some of its funds rolled over into the IRA rollover account. The IRA rollover account as stipulated to by the parties presently has $471,437. The husband has testified that he intends to work at least until age 65.
The court has listened to the parties testify. The court has listened to their witnesses. The court has reviewed all of the exhibits in the case. The court has reviewed the financial affidavits of the parties as well as their stipulations, their claims for relief, and their briefs along with all of the other pleadings in the file. The court has taken into consideration all of the relevant statutory criteria in 46b-81 the assignment of property and transfer of title statute. Section 46b-82 the alimony statute and 46b-62 the attorney's fees statute in making these orders. Court makes the following orders:
(1) The parties have stipulated that the equity in the house is $61,522. The husband is ordered to pay to the wife the sum of $30,761 as her share of the equity in the house within one year of the date of this decree or when the house is sold if that event is sooner.
(2) The court finds that the equity in the boat as agreed on between the parties is $65,000. The husband is to pay to the wife her one-half share of the equity in the boat in the sum of $32,500 within thirty days of the date of this decree.
(3) The parties agree that the life insurance has cash surrender value of $26,000. The husband is to pay to the wife $13,000 representing her one-half interest in that insurance, within 30 days of the date of this decree.
(4) The husband is to pay to the wife the sum of $157,145 by way of an IRA rollover from his IRA account to the wife's IRA account within 30 days of the date of this decree.
(5) The husband is to pay to the wife out of the CMA account the sum of $66,800 within 30 days of the date of this decree.
(6) The husband is to pay to the wife $1,000 per month as periodic alimony for a period of 5 years from the date of this decree or until the earlier death of either party, the wife's remarriage or the wife's cohabitation under the statute. Both CT Page 2462 parties have requested that the alimony award be non modifiable as to amount and duration. Accordingly, the court has adopted that recommendation and makes this amount and duration non modifiable.
(7) The husband is to carry the wife as the beneficiary of his life insurance in the sum of $150,000 for so long as he is paying her alimony.
(8) Each of the parties shall keep their own motor vehicles.
(9) The parties have agreed to the following provisions concerning personal property. "Other than wife's furs and jewelry which are being retained by her, and the husband's antiques and silver, being retained by him, and miscellaneous tools, utensils and small items that have been divided to their satisfaction, the parties agree to divide equally according to value between themselves to their satisfaction, the furniture, furnishings and other contents of the house as at the approximate date of separation in November, 1991, so each will have articles the total value which will be approximately the same.
If the parties are unable to reach agreement for the division of the property on an equal basis according to value, the issues upon which they are unable to agree shall be referred to the Family Relations Division of the Superior Court at Stamford to be decided after mediation. The decision of the Family Relations Division shall be final and binding.
This was the agreement of the parties and is made an order of the court.
(10) The court finds that the attorney's fee requested by the wife is fair and reasonable and if the court did not award those attorney's fees it would undermine its financial orders. The wife is ordered to receive from the husband $5,000 in attorney's fees within 30 days of this decree.
(11) This marriage is dissolved on the grounds of irretrievable breakdown.
(12) The wife shall transfer to the husband all of her right, title and interest in the parties jointly owned sailboat.
(13) The wife shall convey to the husband all of her right title and interest in the premises known as 86 Lyons Plain Road, CT Page 2463 Weston, Connecticut, subject to the existing mortgages which totalled approximately $238,448. Those mortgages the husband shall assume and agree to pay and the husband shall indemnify and hold the wife harmless with respect to such mortgages. The husband shall have exclusive use of the premises.
(14) The husband shall retain his whole life insurance policy which has a cash surrender value of $26,000 subject to the payment as previously provided for in this decision.
(15) All other bank accounts, other assets of the parties as shown on the marital assets list not addressed by this court shall be the property of the person in whose name it is held.
(16) All other claims for relief not addressed by this court herein have been denied.
KARAZIN, J.
Marital Assets — January 1993
 House (equity) (1) $ 61,522 Cars — husband 21,000 — wife 2,650 Insurance 26,000 Boat (1) 65,000 NYNEX 401(k) 401(a) 46,375 IRA Rollover 471,437 CMA Account 167,000 NYNEX Options 3,710 Cash — husband 3,000 — wife 1,000 Investment Northamerican Telepacts (2) 10,000 IRA — husband 11,800 IRA — wife 1,848 --------- $ 888,342 =========
DOCKET NO. FA-92-0121586S ) SUPERIOR COURT SUSAN B. FRANKENHEIMER ) JUDICIAL DISTRICT OF) STAMFORD/NORWALK v. )) AT STAMFORD CT Page 2464 RICHARD W. FRANKENHEIMER )) JANUARY 22, 1993
STIPULATION
The parties and their counsel stipulate that the following deposits and no others were made into Richard Frankenheimer's CNA account at Merrill Lynch from the lump sum settlement with Combustion Engineering:
December 1990 $ 168,137 Identified by C-E as severance, special vacation and regular.
February 1991 27,643 Proceeds of defined benefit plan, i.e. the pension plan that was terminated in 1988.
March 1991 25,308 From thrift plan 15,005 First part of bonus
May 1991 14,000 Tort settlement --------- Total $ 250,093
All of the above were net payments after withholding for income taxes except the $14,000 which was deemed not subject to tax.
AGREED TO:
Plaintiff Defendant
By ______________________________ By __________________________ Mary Ellen Wynn John W. Roberts Her Attorney His Attorney One Canterbury Green Roberts, Gaillard, Kambas, Stamford, CT 06901 Cousins Sweigart, P.C. (203) 356-1355 1055 Washington Boulevard Juris No. 69017 P.O. Box 15630 Stamford, CT 06901 (203) 324-6755 Juris No. 50497 CT Page 2465